# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**ANTONIO WADE KNIGHT,**

        **Petitioner,**

**v.**                                  **Case No. 3:21-cv-566-MMH-LLL**

**SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,**

        **Respondents.**

_____

## ORDER

### I. Status

Petitioner Antonio Wade Knight, an inmate of the Florida penal system, initiated this action on June 1, 2021, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] Knight is proceeding on a Second Amended Petition (Second Amended Petition; Doc. 14). He challenges a 2015 state court (Duval County, Florida) judgment of conviction for felony domestic battery, aggravated domestic battery, and possession of a firearm by a convicted felon. Knight raises three grounds for relief. See id. at 5–11. Respondents have submitted a memorandum opposing the Petition. See

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Response to Petition for Writ of Habeas Corpus (Response; Doc. 17). They also submitted exhibits. See Response Exs. 1–28. Knight filed a Reply. See Petitioner's Traverse to Response to Order to Show Cause (Reply; Doc. 22). This action is ripe for review.

## II. Relevant Procedural History

On March 22, 2011, the state charged Knight by Information with aggravated assault (domestic) (Count One), aggravated battery (domestic) (Count Two), felony battery (domestic) (Count Three), and possession of a firearm or ammunition by violent career criminal (Count Four). Response Ex. 2 at 64–65. After several amendments, the state filed a Fourth Amended Information on July 20, 2015, charging Knight with felony battery (domestic) (Count One), sexual battery (Count Two), aggravated battery (domestic) (Count Three), and possession of a firearm by a convicted felon (Count Four). Response Ex. 5 at 167–68. Knight proceeded to trial and a jury found him guilty of Counts One, Three, and Four as charged in the Fourth Amended Information. Id. at 178, 181–84. The jury returned a not guilty verdict as to Count Two. Id. at 179–80.

On September 9, 2015, the trial court adjudicated Knight as a Habitual Felony Offender on Counts One and Four and a Violent Career Criminal as to Count Three. Response Ex. 6 at 51–53. The trial court sentenced Knight to a ten-year term of imprisonment as to Count One, a thirty-year term of

2

imprisonment with a ten-year minimum mandatory for a firearm as to Count Three, and a three-year term of imprisonment with a three-year minimum mandatory for a firearm as to Count Four. Id. at 43−54. The trial court further ordered that the sentence imposed for Count One run concurrent to the sentence in Count Three, and that the sentence imposed for Count Four run consecutively to the sentence imposed in Count Three. Id. at 49−50. Knight appealed his judgment and sentences to the First District Court of Appeal ("First DCA"). Id. at 78−79. On October 28, 2016, the First DCA per curiam affirmed without a written opinion Knight's convictions and sentences, and on November 28, 2016, it issued the mandate. Response Ex. 15 at 2−3.

Knight filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on July 6, 2017, raising twelve grounds of ineffective assistance of trial counsel and one claim of cumulative error. Response Ex. 22 at 85−129. Specifically, Knight alleged counsel was ineffective for failing to: (1) sever Count Four; (2) object to Count One; (3) object to the state's four amendments to the information; (4) raise a statute of limitations challenge to Count One; (5) object to the trial court enhancing Knight's sentence and running the sentences consecutively; (6) object to a sentence imposed on Count Two that exceeded the statutory maximum; (7) challenge his adjudication as a violent career criminal; (8) object to prosecutorial misconduct; (9) depose and call as a witness Jevon Scott; (10) object to the information; (11)

3

object to the jury verdict form; and (12) challenge or suppress the firearm seized. Id. at 85−125.

On May 1, 2018, the trial court ordered the state to file a response to grounds two and seven of Knight's Rule 3.850 motion. Id. at 149−52. The state, in its response, conceded to ground seven, stating Knight was entitled to resentencing because he did not qualify as a Violent Career Criminal. Id. at 156−57. The trial court later directed the state to respond again, this time to grounds four, five, and nine of Knights Rule 3.850 motion. Response Ex. 23 at 10−11. Before an evidentiary hearing could be held on the Rule 3.850 motion, Knight, with the assistance of counsel, filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Id. at 83−86. In the Rule 3.800(a) motion Knight raised the same claim as he had raised in ground 7 of his Rule 3.850 motion. Id. The trial court granted the Rule 3.800(a) motion and resentenced Knight on June 21, 2019. Id. at 82, 133−43.

As a result of the resentencing, the trial court found grounds five and seven of the Rule 3.850 motion moot. Response Ex. 19 at 171. At the evidentiary hearing, during which Knight was represented by postconviction counsel, the parties agreed that Knight was entitled to relief on ground four. Id. The trial court heard argument on ground nine of Knight's motion. Id. On September 16, 2019, the trial court denied relief on the remaining grounds of Knight's Rule 3.850 motion. Id. at 169−85. On November 23, 2020, the First

4

DCA per curiam affirmed without opinion the trial court's order, and on December 14, 2020, it issued the mandate. Response Ex. 28 at 2−3.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318−19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

5

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

6

> [T]he federal court should "look through" the
> unexplained decision to the last related state-court
> decision that does provide a relevant rationale. It
> should then presume that the unexplained decision
> adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted

by showing that the higher state court's adjudication most likely relied on

different grounds than the lower state court's reasoned decision, such as

persuasive alternative grounds that were briefed or argued to the higher court

or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars

relitigation of the claim unless the state court's decision (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on

an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97−98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for
> claims of state courts' erroneous legal conclusions. As
> explained by the Supreme Court in Williams v. Taylor,
> 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000),
> § 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable application"
> clause. The "contrary to" clause allows for relief only
> "if the state court arrives at a conclusion opposite to
> that reached by [the Supreme] Court on a question of

7

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

8

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102−03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

10

> procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

12

presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting

<u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases,

allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513

U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective

assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby

prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v.

Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the

14

> <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Knight contends the trial court reversibly erred in denying his motion to suppress evidence seized in violation of the Fourth Amendment. Second Amended Petition at 6. Knight alleges his probation officer found a firearm during a warrantless search of Knight's residence in an area of the residence outside of his control. <u>Id.</u> Knight maintains his probation officer did not obtain consent from the owner of the area where he searched

15

and found the firearm. Id. Knight also raises a series of new arguments for the first time in his Reply that are not properly before the Court.[5] The Court does not consider those arguments here. Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citation omitted).

Knight filed his pro se motion to suppress on July 28, 2011, arguing that the probation officer's search of his living residence exceeded the scope of Knight's living space. Response Ex. 2 at 175−85. Knight alleged that his father, Peter Knight, owned the home, and that the probation officer's search that yielded the firearm occurred outside of Knight's "living space." Id. Knight also argued the probation officer conducted the search without a search warrant or the consent of Peter Knight. Id. at 179−80. The trial court held a hearing on the pro se motion on August 10, 2011. Response Ex. 6 at 182−204. In denying the motion, the trial court found the testimony of the probation officer to be more credible than Knight's testimony. Response Ex. 2 at 174. Knight filed a second motion to suppress on June 27, 2012, again arguing that the probation officer retrieved the firearm from an area that was not in Knight's living

---

[5] These arguments include his inability to take depositions before the motion to suppress hearing, ineffective assistance of trial counsel, and his decision to proceed pro se because of trial counsel's ineffective assistance during a critical stage of his proceedings.

quarters and over which he had no control. Response Ex. 4 at 6−14. He also argued there was no physical evidence−fingerprint or DNA−on the firearm to show his possession of it. Id. The trial court heard argument on the second motion to suppress on July 26, 2012, see Response Ex. 7 at 10−15, and ultimately denied the second motion, see Response Ex. 4 at 5.

The law is well settled that a federal court cannot entertain a claim of a violation of a habeas petitioner's Fourth Amendment rights if the petitioner had an opportunity for full and fair consideration of his claim in the state courts. Stone v. Powell, 428 U.S. 465, 494 (1976); Bradley v. Nagle, 212 F.3d 559, 564 (11th Cir. 2000). "[F]ull and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by higher state court." Mincev v. Head, 206 F.3d 1106, 1126 (11th Cir. 2000) (citation omitted). The Florida state court's consideration of Knight's claims in Ground One triggers the Stone bar, precluding federal review of his Fourth Amendment claim, because the state court provided Knight with processes for full and adequate consideration of this Ground.

A review of the procedural history of this matter establishes the state provided Knight ample opportunity for "full and fair consideration" of his claims. The trial court held a hearing on Knight's motion to suppress, receiving testimony and argument on the issues presented in the motion. Response Ex. 6 at 182−204. After Knight raised a second, nearly identical claim in another

17

motion to suppress, the trial court heard additional argument from Knight. Knight failed to appeal either ruling on direct appeal. Response Ex. 13 at 2−39. Knight does not demonstrate that the trial court failed to afford him a full and fair opportunity to develop the factual issues of his Fourth Amendment claim. And Knight could have, but did not, raise the issue to the First DCA. Any allegation of state court error in denying his motions to suppress does not suffice to avoid the <u>Stone</u> bar given the record here. <u>See</u> <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324−25 (5th Cir. 1978) (holding that the <u>Stone</u> bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim.). Accordingly, under <u>Stone</u>, relief on the claim in Ground One is due to be denied.

Even assuming <u>Stone</u> did not bar the Court's consideration of this issue, Knight's Fourth Amendment claim is barred because he did not exhaust the federal nature of this claim in state court. To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille</u>, 489 U.S. at 351 (emphasis omitted). This means state prisoners must invoke one complete round of the State's "established appellate review process." <u>O'Sullivan</u>, 526 U.S. at 845 (1999). While Knight did file a direct appeal, he did not seek review of the trial court's decisions denying the motions to suppress on Fourth Amendment grounds.

Because Knight never raised the claim in the trial court or direct appeal, he cannot return to state court to properly exhaust this claim through a second direct appeal. See Hall v. State, 823 So. 2d 757, 763 (Fla. 2002) (stating issue not raised in an initial brief is procedurally barred) abrogation on other grounds by State v. Johnson, 122 So. 3d 856, 862 (Fla. 2013). Thus, the claim is unexhausted and procedurally barred in federal court. Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). Knight has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Therefore, the claim in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Knight contends the trial court reversibly erred in denying his claim of ineffective assistance of trial counsel for counsel's failure to call rebuttal witness Javon Scott.[6] Second Amended Petition at 9. Knight

---

[6] Knight lists every ground as "Ground One" in his Second Amended Petition. In this Order, the Court relabels the grounds in numerical order based on their appearance in the Petition.

alleges the trial court's ruling deprived him of his rights under the Due Process and Equal Protection Clauses. Id.

Knight raised a claim of ineffective assistance of trial counsel for failing to call this witness in his Rule 3.850 motion. Response Ex. 22 at 110−12. The trial court denied the claim, stating:

> At the evidentiary hearing, Ms. Brewer, Defendant's trial counsel, testified as follows. She represented Defendant in the instant case, and when she was appointed to the case, she knew Mr. Scott had been listed as a defense witness. During her first conversation with Defendant, they discussed whether there was a conflict because of the firm that represented Mr. Scott, but it was determined there was no conflict. Ms. Brewer participated in a deposition of Mr. Scott on September 26, 2014, but only the State questioned Mr. Scott since he was listed as a defense witness and Ms. Brewer does not typically question her witnesses under oath. During her pre deposition conversation with Mr. Scott, Mr. Scott told Ms. Brewer that Defendant and Mr. Scott's aunt, who was the victim, got into an argument about a letter, his aunt pulled a gun on Defendant, and Defendant took it from her. Mr. Scott was not present when the incident occurred. In fact, Mr. Scott had not seen Defendant for years before seeing him in the jail yard after Defendant's arrest. Mr. Scott's aunt told him everything he knew about the incident, and he could not provide a point-by-point recitation of the events that occurred. Ms. Brewer could not say with any certainty whether Mr. Scott was talking about the incident he was arrested for in this case or another incident. Ms. Brewer's notes did not indicate that Mr. Scott said the victim was fabricating the events that occurred, and she does not think Mr. Scott would have ever said his aunt was fabricating because of how much he was saying he would stand by his family and loved his aunt.
>
> Whether she argued the necessity defense or not, Ms. Brewer could say that she definitely looked into a necessity defense. Ms. Brewer spoke with Defendant about what Mr. Scott said, and she thought he would not be a helpful defense witness. She stated Mr. Scott

20

could possibly have helped with the necessity defense, but her overwhelming feeling after the deposition was that he was not going to be a good defense witness because he was going to stick with his family. Ms. Brewer stated several times that the victim was Mr. Scott's favorite aunt and she had just given him money. Ms. Brewer testified Mr. Scott could have aided in the necessity defense, but he also could have made it worse. Mr. Scott also had several prior felony convictions.

Defendant testified as follows. Mr. Scott told Defendant that his aunt said she fabricated the story and that she pulled the gun on Defendant. Mr. Scott told Defendant his aunt did Defendant wrong and said he would testify on Defendant's behalf. Defendant does not recall having a conversation with Ms. Brewer regarding the substance of Mr. Scott's deposition, and when he asked Ms. Brewer if Mr. Scott would be called as a witness she told Defendant his testimony was hearsay. On cross-examination, Defendant acknowledged that he has taken a lot of action on his own in this case, had disputes with his attorneys regarding things being done or not being done, and did not hesitate to bring issues to the Court's attention or ask to represent himself.

Initially, the Court finds Mr. Scott was deposed. Though Ms. Brewer did not ask Mr. Scott any questions during the deposition, Ms. Brewer had the opportunity to speak with Mr. Scott prior to the deposition and to hear Mr. Scott's answers to the State's deposition questions. As such, Defendant is not entitled to relief on his claim that counsel was ineffective for failing to depose Mr. Scott.

As to Defendant's claim that counsel was ineffective for failing to call Mr. Scott as a witness at trial, the Court also finds Defendant is not entitled to relief on this claim. Contrary to Defendant's assertion, Ms. Brewer had no indication that Mr. Scott would testify his aunt fabricated the events that occurred. Instead, Ms. Brewer testified she would have been concerned calling Mr. Scott as a witness because he was very close to his aunt. Ms. Brewer testified her overwhelming feeling after the deposition was that Mr. Scott would not be a good defense witness because he was going to stick with his family. She did not think Mr. Scott would ever say his aunt was fabricating because of how much he said he would stand by his family and loved his aunt. She indicated he

might have aided in a necessity defense, but he also might have made it worse.

Considering Ms. Brewer's testimony, the Court finds Ms. Brewer's reasons for not calling Mr. Scott constituted sound trial strategy, and therefore, Ms. Brewer was not ineffective for failing to call Mr. Scott as a witness. See Souffrant v. State, 994 So. 2d 407, 410−11 (Fla. 3d DCA 2008) ("Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").

Even if Ms. Brewer was found deficient for not calling Mr. Scott as a witness, Defendant cannot establish he was prejudiced by such failure. While Ms. Brewer thinks Mr. Scott was talking about the same firearm that was the subject of the charges against Defendant, she could not say with certainty that he was talking about the same incident. Ms. Brewer testified that the only information Mr. Scott had was what his aunt told him, and that was that his aunt and Defendant argued over a letter, his aunt pulled a gun, and Defendant took the gun from her. There were no specific facts to show Mr. Scott was talking about the crimes charged in this case. Additionally, if Defendant wanted to present Mr. Scott's testimony to show the victim was lying and Defendant's version of events was actually what occurred, Mr. Scott's testimony would not have helped Defendant. Defendant's version of events differed from Mr. Scott's aunt's alleged version of events. At trial, Defendant testified that he and the victim were arguing about money and the argument started at the victim's house; whereas, Ms. Brewer testified Mr. Scott said Defendant and the victim were arguing over a letter. (Ex. J at 490−91.) Further, Mr. Scott had no specific facts regarding when and where the victim allegedly pulled the gun on Defendant and where Defendant took the gun. Based on the foregoing, the Court finds there is not a reasonable probability the outcome of the trial would have been different if Mr. Scott was called as a witness at trial.

The Court also finds Defendant's testimony is not credible. Based on Defendant's assertiveness in this case, it is difficult to believe that if Defendant thought Mr. Scott should be called as a witness at trial he would have allowed the opportunity to call Mr. Scott to

pass without raising the issue before the Court.

Based on the foregoing, Ground Nine is denied.

Response Ex. 19 at 178−81. On November 23, 2020, the First DCA per curiam affirmed without opinion the trial court's order, and on December 14, 2020, it issued the mandate. Response Ex. 28 at 2−3.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. The trial court relied on its observance of the witnesses during their testimony to weigh their credibility and found counsel's testimony to be more credible. The trial court was able to view the demeanor of the respective witnesses during the evidentiary hearing. The state court's credibility determinations are entitled to heightened deference. Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) ("A certain amount of deference is always given to a trial court's credibility determinations. That the case is before us on habeas review heightens that deference.").

Also, trial counsel's decision on whether to call a witness is the "epitome" of a strategic decision. Raleigh v. Sec'y, Fla. Dep't of Corr., 827 F.3d 938, 956 (11th Cir. 2016) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."). Trial counsel testified that she chose not to use Scott as a defense witness because there was no indication that Scott would testify that the victim fabricated the allegations against Knight. Indeed, Scott was not present during the alleged offense and had no first-hand knowledge of what occurred. Scott was also related to the victim and borrowed money from her, and trial counsel questioned whether the familial relationship would impact his ability to testify in Knight's favor. Scott also had a felony record, which could impact the jury's view of his credibility. The Court finds reasonable trial counsel's strategic decision to forgo presenting Scott as a witness. Thus, relief on Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Knight contends he was denied effective assistance of counsel based on the cumulative effect of counsel's errors. Second Amended Petition at 11. He maintains the errors raised in his Second Amended Petition, even if individually harmless, when taken together were so egregious as to deny his constitutional rights under the Sixth Amendment. Id.

Knight maintains that the cumulative effect of trial counsel's ineffectiveness deprived him of a fair trial. Petition at 11. He raised this claim in his Rule 3.850 motion. Response Ex. 22 at 126. In addressing this issue, the trial court ruled as follows:

> Defendant claims counsel's acts and omissions, when considered cumulatively, constituted ineffective assistance of counsel. Based on the reasoning stated for denying the other claims addressed in this Order, the Court finds Defendant's claim of cumulative error must also be denied. See Parker v. State, 904 So. 2d 370, 380 (Fla. 2005) ("[W]here the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails."). Accordingly, Ground Thirteen is denied.

Response Ex. 19 at 183–84. On November 23, 2020, the First DCA per curiam affirmed without opinion the trial court's order, and on December 14, 2020, it issued the mandate. Response Ex. 28 at 2–3. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Indeed, the Eleventh Circuit has made clear that where there is no individual merit to

individual claims, the argument that cumulative error requires reversal is baseless. United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005); see also United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984). Here, because the Court has determined that none of Knight's individual claims of error or prejudice have merit, Knight's cumulative error claim cannot stand. See Taylor, 417 F.3d at 1182 ("There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Accordingly, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Knight's claim of cumulative error is due to be denied.

## VII. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Knight seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Knight "must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335−36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Second Amended Petition (Doc. 14) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Second Amended Petition and dismissing this case with prejudice.

3.      If Knight appeals the denial of the Second Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of August 2024.

**MARCIA MORALES HOWARD**
United States District Judge

c:      Antonio Wade Knight  # 296322
        Counsel of record